297 F.2d 470
 The COUNTY OF TODD, MINN., a Municipal Corporation; Earl Steuck; Jay Bain; and Lyle Pantzke, Appellants,
v.
Louise M. LOEGERING, as Trustee for the Heirs of Arthur Simonson, Decedent, Appellee.
 No. 16619.
 United States Court of Appeals Eighth Circuit.
 December 20, 1961.
 
 1
 K. L. Wallace, Alexandria, Minn., and Frank Claybourne, St. Paul, Minn., for appellants, Doherty, Rumble & Butler, St. Paul, Minn., on the brief.
 
 
 2
 Charles W. Kennedy, Wadena, Minn., for appellee, Bradford & Kennedy, Wadena, Minn., on the brief.
 
 
 3
 Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.
 
 
 4
 BECK, District Judge.
 
 
 5
 This appeal is from a Judgment in favor of Louise M. Loegering as trustee for the heirs of Arthur Simonson, decedent, and against Todd County, Minnesota, a municipal corporation, and three of its employees, Earl Steuck, Jay Bain and Lyle Pantzke, Loegering hereinafter being referred to as appellee and the others as appellants.
 
 
 6
 The case, the trial thereof, the $15,000 verdict and the Judgment entered accordingly, arose out of a collision between a 1953 model Nash car driven by the plaintiff's decedent and a Todd County owned highway grader, operated by one of its employees, the said Earl Steuck. Arthur Simonson, as a result, was killed at the time of the impact or a few minutes later. The statutory basis for the suit is Minnesota's Wrongful Death Statute M.S.A. § 573.02.
 
 
 7
 Plaintiff's appointment as trustee for the heirs of Arthur Simonson, deceased, under that Act, factually not disputed, makes her a "trustee of an express trust * * *." and as such, empowered to bring the action in her own name, without joining with her the party or parties for whose benefit the action was brought. Rule 17 F.R.Civ.P., 28 U.S. C.A. and Beck v. Groe, 245 Minn. 28, 70 N.W.2d 886, 52 A.L.R.2d 875 (1955).
 
 
 8
 Though the rights of such a trustee under the language of that rule appears as an exception to the general rule that "every action shall be prosecuted in the name of the real party in interest", 17(a) F.R.Civ.P., it is held that such a trustee, in diversity cases, is in fact the real party in interest. As said in Mecom, Administrator v. Fitzsimmons Drilling Co., Inc. et al., 284 U.S. 183, 52 S.Ct. 84, 86, 76 L.Ed. 233:
 
 
 9
 "The petitioner insists that, where an administrator is required to bring the suit under a statute giving a right to recover for death by wrongful act, and is, as here, charged with the responsibility for the conduct or settlement of such suit and the distribution of its proceeds to the persons entitled under the statute, and is liable upon his official bond for failure to act with diligence and fidelity, he is the real party in interest, and his citizenship, rather than that of the beneficiaries, is determinative of federal jurisdiction. This we think is the correct view. The applicable statutes make the administrator the trustee of an express trust and require the suit to be brought and controlled by him." (Emphasis supplied.)
 
 
 10
 That viewpoint is in the pronouncement, by this court, in Minnehaha County, S. D. v. Kelley, 8 Cir., 150 F.2d 356, 358 (1945):
 
 
 11
 "Plaintiff sued in a representative capacity; she was a resident and citizen of the State of California; she was the only necessary or proper party plaintiff. Parties acting in a representative capacity, if jurisdictional requirements are otherwise satisfied, have the right to maintain a civil action in a Federal court, and the citizenship of the representative party controls irrespective of the citizenship of the persons for whose benefit the action may be brought. In other words, the Federal courts have jurisdiction of actions by or against executors and administrators, if their citizenship is diverse from that of the opposing party. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904; Mexican C. R. Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245."
 
 
 12
 Again, on this point it is said in Mecom [284 U.S. 183, 52 S.Ct. 85.]:
 
 
 13
 "It is settled that the federal courts have jurisdiction of suits by and against executors and administrators if their citizenship be diverse from that of the opposing party, although their testators or intestates might not have been entitled to sue or been liable to suit in those courts for want of diversity of citizenship. Childress v. Emory, 8 Wheat. 642, 5 L.Ed. 705; Coal Co. v. Blatchford, 11 Wall. 172, 20 L.Ed. 179; Rice v. Houston, 13 Wall. 66, 20 L.Ed. 484; Amory v. Amory, 95 U.S. 186, 24 L.Ed. 428; Blake v. McKim, 103 U.S. 336, 26 L.Ed. 563; American Bible Society v. Price, 110 U.S. 61, 3 S.Ct. 440, 28 L.Ed. 70; Continental Insurance Co. v. Rhoads, 119 U.S. 237, 7 S.Ct. 193, 30 L.Ed. 380."
 
 
 14
 Applying the rule in those cases, the trial court, Loegering v. County of Todd, D.C.Minn., 185 F.Supp. 134, 136 (1960), observes:
 
 
 15
 "In both of the above cases the plaintiffs were suing as administrators appointed by the State Courts. In the instant case, the plaintiff is suing as a Trustee, but there is no reason why the same principle of law should not apply regardless of the title of the representative who brings the action for wrongful death.",
 
 
 16
 and concludes:
 
 
 17
 "* * * that the purpose of the 1951 amendment was mainly to permit the appointment of a representative by the District Court in which the wrongful death action is instituted, and thus to obviate the necessity of requiring the qualification of an administrator or executor in the Probate Court. As the Trustee appointed to bring the wrongful death action, the plaintiff here is in the same category as the special administrator in Minnehaha County v. Kelley, supra."
 
 
 18
 But, it is argued, the anti-collusion issue, was not before the courts in those cases, here it is, and those pronouncements, therefore, do not apply. That argument is made under the point that: "The District Court erred in failing to dismiss this action because it was brought by a Montana trustee who was appointed for the purpose of manufacturing diversity jurisdiction". Invoked in this connection is § 1359, 28 U.S.C.A., which provides:
 
 
 19
 "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."
 
 
 20
 Aiding us on that point, is this court's comment in McCoy v. Blakely, 8 Cir., 217 F.2d 227, 230 (1954) that:
 
 
 21
 "Even if, as contended by the defendant, the appointment of Blakely was for the sole purpose of creating diversity of citizenship in order to invoke the jurisdiction of the Federal Court, that fact, without more, would not establish the alleged violation of the relied-upon statute. As was stated by this Court in Curb and Gutter Dist. No. 37 of City of Fayetteville v. Parrish, 8 Cir., 1940, 110 F.2d 902, 906, a case involving the appointment of a non-resident trustee for the purpose of creating diversity of citizenship in order to establish the jurisdiction of the Federal Court:
 
 
 22
 "* * *, the motive which may have actuated or induced the bondholders to select a non-resident trustee is immaterial. The appointment and qualification of the plaintiff trustee was real and bona fide. It was not merely colorable or feigned. No wrongful act was perpetrated in invoking the jurisdiction of this Court. In other words, the bondholders simply did that which was lawful and no fraud can be perpetrated thereon. It is not wrongful for parties to prefer to litigate the subject matter of a controversy in federal court if no improper act is done in furtherance thereof."
 
 
 23
 See also 75 A.L.R.2d at 726 relating to cases where improper or collusive action under this Section have not been shown and Harrison v. Love, 6 Cir., 81 F.2d 115 (1936).
 
 
 24
 Here, it is true, there can be no illusions as to the motive which prompted the appointment of the plaintiff as trustee and the commencement of the case in the Federal court. Sought, of course, was a federal forum with a jury, not all residents or taxpayers of the defendant county and as such at least indirectly interested in the final outcome.
 
 
 25
 But with that motive to be excluded in the evaluation of the manufacturing of diversity of jurisdiction charge, as mandated by the aforementioned cited cases, we find no acts of collusion or improprieties, in the mapping of the strategy, designed to avoid risks of jury prejudice and recovery of damages within the permitted legal limits, where as here the daughter, under the Wrongful Death Statute, was duly appointed by the State District Court, and where in the process her qualifications were finally settled and determined, Mecom, 284 U.S. at page 189, 52 S.Ct. at page 87.
 
 
 26
 Neither do we ascribe impropriety or collusion in the mother's resignation as trustee, in the daughter's agreement to take her place, in her subsequent appointment as trustee, in her commencement of the suit which led to this appeal and in the claim that others, including her counsel, were at the helm of the action and not, she. These are the usual expedients employed by counsel and client in matters of this kind. The evidence as a whole, on this point and as a matter of law, motive being deleted, permits no inference of sham, pretense or fiction or any other factors which enter into collusive or improper joinder to effect federal jurisdiction. Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784, 789 (1959), infra, and Jaffe v. Philadelphia & Western R. Co., 3 Cir., 180 F.2d 1010 (1950).
 
 
 27
 Moreover, injecting of such factors, as inferences from the state court proceedings where the appointment was made, constitutes a collateral attack on that court's order, which Mecom does not permit.
 
 
 28
 Martineau v. City of St. Paul et al., 8 Cir., 172 F.2d 777, 780 (1949), mainly relied on by the appellants, is not in point. This court affirmed the District Court's judgment of dismissal, 78 F. Supp. 892, for want of diversity of citizenship and no jurisdiction, not on the basis of violation of § 1359, but on the ground that:
 
 
 29
 "The proper title of this action is, `Daniel Joseph Murphy, a minor, by Robert J. Martineau, his general guardian, Plaintiff, versus' the defendants. As so amended, the title discloses what is the fact, namely, that the actual controversy is between citizens of Minnesota, and that the diversity of citizenship requisite for federal jurisdiction is lacking.
 
 
 30
 "Even if this controversy were to be regarded as one between the guardian and the defendants, we would still be of the opinion that diversity of citizenship was lacking, since the guardian is a mere agent of the Probate Court of Ramsey County, Minnesota, appointed for the purpose of enforcing a claim of a ward of that court against citizens of Minnesota. We think that a Probate Court of Minnesota, by appointing a nonresident as a guardian for a Minnesota minor, cannot transmute what is purely a local controversy into one between citizens of different states, or confer jurisdiction of the controversy upon the United States District Court for the District of Minnesota."
 
 
 31
 Cerri v. Akron-People's Telephone Co., D.C.Ohio, 219 F. 285 (1914), the other one of the two cases mainly relied on by the appellants, has little significance: (1) because it is in conflict with the rule in this Circuit and (2) because it is no longer the rule in the Sixth. Jaffe v. Philadelphia & Western R. Co., supra.
 
 
 32
 More, obviously, is required to show a breach of the terms of that Section as said in Corabi: [264 F.2d 788]
 
 
 33
 "There are other considerations. The statute uses the phrase `improperly or collusively' to characterize the manufacture or joinder prohibited by it. The word `collusion' is a strong one. The term `collusion' indicates `A secret agreement and co-operation for a fraudulent or deceitful purpose; deceit; fraud.' Webster's New International Dictionary, 2 ed. The same authority quotes Spencer, "The foxe, maister of collusion,' and citing Bouvier goes on to state the meaning of the term at law as `An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law.' Certainly to make use of state law to obtain diversity jurisdiction even though the object may be a high verdict in a federal court is not collusive within the ordinary meaning of that term. Moreover the word `collusion' generally is employed to indicate an illegal agreement or understanding between opposing sides of a litigation rather than to an arrangement effected by one side of the sort at bar. Here the plaintiff's side of the case acted for what it deemed to be its own benefit and was opposed heartily by the other party to the litigation. The terms `improper' or `improperly', according to Webster, mean `Not suited to the circumstances, design, or end; not appropriate, fit, or congruous; as, an improper medicine; improper dress.' Webster gives as synonyms: `Improper, indecent, unseemly, indecorous, unbecoming, indelicate.' The word `improperly' clearly connotes impropriety. We cannot perceive that here. Had Congress intended to prohibit the creation of federal diversity jurisdiction under such circumstances as those at bar it could have done so simply by omitting the words `improperly or collusively'."[1]
 
 
 34
 Contributory negligence as a matter of law, on the part of the plaintiff's decedent, is the second point urged as a basis for reversal. This is predicated on a claim, that a motorist who drives over a sharp hillcrest at forty miles per hour and violently collides head-on with a 10-foot-high road grader, coming up on his side of the road and fails to make any effective application of brakes before the collision, where his sight distance over the crest was more than two hundred feet, is guilty of such negligence.
 
 
 35
 Barriers, confronting the appellants, as that theory is pursued, are in the rules: (1) That the evidence must be viewed as a whole and in the light most favorable to the verdict. Jablinske v. Eckstrom, 247 Minn. 140, 76 N.W.2d 654, one which also applies on appeal, Greene v. Werven, 8 Cir., 275 F.2d 134 (1960) and Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859 (1953); (2) that the defendant had the burden of proving contributory negligence, Bielinski v. Colwell, 242 Minn. 338, 65 N.W.2d 113; (3) that under Minnesota law, it is presumed, until the jury finds otherwise, that a driver in an accident acted with due care, M.S.A. § 602.04 (Laws 1957, c. 949, Sec. 1)[2], and (4) in the trial court's instructions to the jury, having covered all aspects of the case, without any exceptions from the appellants, except those specifically referred to in subsequent parts of this opinion.
 
 
 36
 Answer to that contention, under those restrictions, is in the evidence. We find it in the forty miles per hour over the hillcrest, not necessarily being negligent under the circumstances and in the conflict in the testimony as to the sight distances. There are conflicts, too, in the testimony as to the condition of the brakes on the car and in timely use and application as the driver became confronted with the impending collision. We note a fact issue, as to any permissible inference of knowledge on the part of the driver of mechanical defects in the brakes, Minder v. Peterson, 254 Minn. 82, 93 N.W.2d 699; M.S.A. § 169.67, subds. 1, 5, and another, as to whether the driver knew, or reasonably could have expected the road grader to be operated against traffic and one more, if he didn't, could it be said as a matter of law that he could not have avoided the accident if the grader had been going in the other direction.
 
 
 37
 The foregoing, suffices, under the authorities and the rules to which we have referred, as a basis for agreement with the trial court, that the question of contributory negligence was for the jury and not for the court.
 
 
 38
 Next argued, but only as basis for a new trial, is a contention to the effect that admissions in evidence of plaintiff's Exhibits 30, 31 and 32 constitutes prejudicial error.
 
 
 39
 Exhibits 30 and 32, "similar in nature" and both used substantially for the same "prejudicial purpose" according to the appellants, are argued as one. It is admitted that both contain data dealing with design of "highways for stopping distances at various speeds". Exhibit 30, when offered, was objected to because the defendant's county engineer was not its employee when it was distributed in Todd County and Exhibit 32, because it wasn't used "in the maintenance of roads, merely construction", hence, not relevant, with background testimony, however, that it had "authentic bearing upon passing sight distances on crest curves".
 
 
 40
 Exhibit 31 is a booklet also published by said Highway Department and entitled "Safety Rules Governing Employees and Equipment", which contained: "A rule prohibiting blading against traffic on state highways, except in urgent cases, in which event extra precautions shall be taken". Objection to this one when offered under Rule 78 (a)[3] was on the ground that it was "prejudicial, immaterial, irrelevant", since it pertained to conduct of state highway employees and was not pertinent to the maintenance of county road grades.
 
 
 41
 "We object", is appellants only protest under this record, against the introduction in evidence, for illustration purposes of plaintiff's Exhibit 35, which is a patented device for raising and lowering a flag on the type of a road grader used in this case; this in conjunction with the other complained of exhibits, is given as further basis for their claim, that they did not have a fair trial and that substantial rights of theirs were prejudicially affected.
 
 
 42
 The objection to Exhibit 35, fails as a sustaining basis for review inasmuch as "we object", did not specifically bring to the attention of the trial court, the matters counsel may have intended by that protest. Een v. Consolidated Freightways, 8 Cir., 220 F.2d 82, 88 (1955) where this court in a situation which applies here makes the comment:
 
 
 43
 "It is essential to a review of a ruling on the admissibility of evidence that a specific objection be made in the trial court sharply calling the ground relied upon to the attention of the court and on appeal the objection interposed must be relied upon. United States v. Nickle, 8 Cir., 70 F.2d 873; Cockrell v. United States, 8 Cir., 74 F.2d 151; Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 85 F.2d 187; Taylor v. Taylor, 8 Cir., 211 F.2d 794; Simkins Federal Practice, Third Edition, Section 581. The applicable rule is stated in Simkins Federal Practice, Third Edition, Section 581, as follows:
 
 
 44
 "`Objections to evidence must be specific, and no reversal can be had except upon the ground specifically stated.'
 
 
 45
 "This rule has uniformly been followed by this court. Thus in United States v. Nickle, supra [70 F.2d 875], we said:
 
 
 46
 "`Where complaint is made that the court erred in overruling an objection to the admissibility of evidence, it is generally essential that the objection definitely and specifically state the grounds on which it is based so that the court may intelligently rule upon it. In other words, the appellate court will not reverse on a ruling which overrules an objection to testimony, unless a good objection has been made, even though the testimony might have been objectionable on grounds not specifically and sharply called to the court's attention.'
 
 
 47
 "What is said in Metropolitan Ins. Co. v. Armstrong, supra [85 F. 2d 190], is here apposite. We there said:
 
 
 48
 "`Defendant urges that there was no evidence that the insured kept his diabetes under control. This ground of objection, however, was not embodied in the objection as made, nor called to the attention of the lower court or opposing counsel. It cannot, therefore, be considered on appeal.'
 
 
 49
 "In the recent case of Taylor v. Taylor, supra [211 F.2d 797], referring to a similar question we said:
 
 
 50
 "`Objections to the admission of evidence must be specific in federal courts.'"
 
 
 51
 Obviously, whether the witness was or wasn't a Todd County engineer when "30" was distributed, by itself has no prejudicial bearing on the defendants' alleged negligence. True, some hearsay evidence came into the record by reason of the admission of this exhibit. But it was not objected to on that ground and, therefore, not before us on this appeal under Een. The "relevancy" objection to "32", because it was relied on in the construction of roads and not maintenance, seems obviated in view of the admission, that it had "authentic bearing upon passing distances on crest curves." As for "31" it could not have been "prejudicial, immaterial, irrelevant", even though it pertained to extra precautions by state employees when blading is done against traffic on state highways, since such precautions under common law, conceivably can be even more important on county roads, where traffic may be less but conditions of the road beds and other driving hazards greater. The data in those exhibits in any event, were no more than references to rules for safety warning signals when an operation as dangerous as this one is underway, or expressions as to the degree of care required by a reasonably prudent operator of a road grader, driving on the wrong side of the road against traffic. Other evidence, not objected to, showed defendants to have been familiar with the contents of all three of the admitted exhibits, and testimony, independent of those exhibits, admitted without objection and having bearing on all of the issues, impels the conclusion that the objections referred to are within the rule that:
 
 
 52
 "No error in either the admission or the exclusion of the evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rule 61 F.R.Civ.P.
 
 
 53
 Four alleged prejudicial errors are grouped under appellants' fourth and last point, "that a new trial must be granted", because of the trial court's refusal to give a requested instruction as to paragraph 5, of Section 169.03, M.S.A., which provides:
 
 
 54
 "The provisions of this chapter shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the roadway of a highway, but shall apply to such persons and vehicles when traveling to or from such work,"
 
 
 55
 and in explanation thereof:
 
 
 56
 "This statute as applied to the facts of this case simply means that it was not unlawful for the grader to be operating on the lefthand side of the road as it would have been for a motorist who was driving on his lefthand side of the road. Neither does this statute give anyone the right to operate such a vehicle in maintaining the road on the wrong side of the road without regard to conditions and circumstances then existing. It is for you, the jury, to determine under all the facts and circumstances of this case whether the defendants or any of them failed to exercise due care at the time and place of the accident."
 
 
 57
 Also, error is predicated on the court's instruction to the jury:
 
 
 58
 "That the defendants were required by law to exercise reasonable care to warn motorists of the operation of the grader against traffic.",
 
 
 59
 and on the court's omission from its emergency instruction "that it does not apply if the emergency was caused by the person claiming the benefit of the rule", and again error to refuse to instruct:
 
 
 60
 "Where the brakes of the decedent's car were applied hard, yet made no skid marks, it was error to refuse to instruct the jury on M.S.A. Sec. 169.67, Subd. 5, relating to brakes", which provided:
 
 
 61
 "The service brakes upon any motor vehicle or combination of vehicles shall be adequate to stop such vehicle or vehicles when traveling 20 miles per hour within a distance of 30 feet when upon dry asphalt or concrete pavement surface free from loose material where the grade does not exceed one per cent." (Amended by laws of 1959, c. 277, sec. 1.),
 
 
 62
 giving, instead, the substance of subdivision 1:
 
 
 63
 "Every motor vehicle, other than a motor-cycle, when operated upon a highway, shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels".
 
 
 64
 The gravamen, as to the first of those four is the asserted right to have the jury explicitly instructed that the grader could be where it was and moving against traffic when the collision took place and that the ingrained notion of a driver being on his right side of the road is deep enough to permit an inference that the jury assumed negligence, since it was not specifically charged otherwise.
 
 
 65
 Johnson v. Bergquist, 184 Minn. 576, 239 N.W. 772 (1931), relied on as authority, is not in point, liability in that case having been grounded on the Minnesota Traffic Regulation Act, and not on common law negligence as here.
 
 
 66
 Moreover, the first sentence of the proffered explanation is inaccurate and misleading, in that it could have led the jury to believe that the case was based on that Act and the second, confusing, because it expressed modification of the rule referred to in the first. Zurko v. Gilquist, 241 Minn. 1, 62 N.W. 2d 351 (1954); Cantieny v. Friebe, 341 Mich. 143, 67 N.W.2d 102 (1954) and Kollodge v. F. and L. Appliances, Inc., 248 Minn. 357, 80 N.W.2d 62 (1956).
 
 
 67
 Complete offsets, in any event, to whatever danger there may have been in the jury ascribing negligence to the defendants because of the grader's position and direction of movement, is in the unopposed statement of counsel for the appellants in the argument to the jury, which could be considered[4] to the extent that it coincided with the jury's own recollection and construction of the evidence:
 
 
 68
 "* * * The next thing is the custom there of grading roads as they do, alternating pretty much 50-50 from one side to the other, and incidentally, of course, this is permitted by law. The Highway Traffic Act says that you and I may not drive our cars on the lefthand side of the street, and excepts maintenance equipment while actually used in maintenance of the roads. You may rest assured if it were unlawful they would not have been doing it. They had been doing this for all the years these men know anything about, and it is not limited to Todd County. Pantzke had been with two other counties and they did the same thing there. * * * I believe it's fair to assume that this is a uniform and general practice throughout the state of Minnesota, and that plaintiff * * * would have brought in some testimony to show you that some place else they do it thus and so. We have had no such testimony.
 
 
 69
 * * *
 
 
 70
 "Nor can I concede that he knows more about it than the legislature, our law makers in the State of Minnesota, who have seen fit to pass a law specifically exempting vehicles such as this from the requirement that vehicles operate on the right hand side of the pavement. If they, in their wisdom, didn't think it was necessary that you do this, I don't believe they would have exempted this kind of equipment from that law. * * *"
 
 
 71
 Our approach to the other three alleged prejudicial errors, is from the standpoint that the recovery sought was on the basis of common law negligence and that recovery can be had on that basis under Minnesota law and facts such as these. Hockenhull v. Strom Const. Co., 212 Minn. 71, 2 N.W.2d 430, 432 (1942), where it was held:
 
 
 72
 "We think that the trial judge improperly directed a verdict for the defendant. Nothing in the highway traffic regulation act leads to the conviction that it was intended to supersede the common law upon the subject of negligence. Because one engaged in work upon the highway could not be expected to comply with provisions as to turning and starting (§§ 2720-190 to 2720-195), right of way (§§ 2720-196 to 2720-201), stopping, standing, and parking (§§ 2720-217 to 2720-220), and the other specific regulations of the act, such persons were specifically excluded from its application. § 2720-155(d). However, that exclusion cannot be understood as legislative direction that such persons shall similarly be exempt from the mandate of the common law imposing the obligation of reasonable care commensurate with the circumstances upon those who in discharging contract duties must pursue activities upon the public way."
 
 
 73
 See also W. Hodgman & Sons, Inc. v. Motis, 8 Cir., 268 F.2d 82 (1959).
 
 
 74
 The trial court's failure to include in its emergency instruction the phrase "through no fault of his own", is the gist of the claim that the omission constituted prejudicial error which affected substantial rights of the appellants. (Emphasis supplied).
 
 
 75
 Basis is Dunnell, Minnesota Digest, 3rd Edition, Sec. 6972(a), which provides:
 
 
 76
 "One suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions. A motorist cannot claim the benefit of the rule justifying a loss of control caused by an emergency or traffic hazard when that condition is created by his own negligent acts * * * Emergency rule is but a special application of the general standard of reasonable care, requiring jury to consider fact of sudden peril where there was a real peril and party seeking to invoke it did not contribute thereto."
 
 
 77
 An instruction under that rule: "One suddenly confronted by a peril, through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions.", was referred to as "the correct rule as it has been approved by this court", in Merritt v. Stuve, 215 Minn. 44, 9 N.W.2d 329, 336 (1943), as the trial court's instruction,[5] with the emphasized phrase omitted, was disapproved. (Emphasis supplied). Merritt agreed, that the trial court's use, in its instruction of the expression, "`by the negligent act of another,' by implication * * * would ordinarily be understood to mean that there could be no negligence on the part of the person invoking the rule", but added: "We do not, however, approve the rule in this form, and we adhere to the rule as we have previously declared it to be". See Johnson v. Townsend, 195 Minn. 107, 261 N.W. 859 (1935).
 
 
 78
 While the emergency rule mentioned and the Minnesota court's construction of it is explicit on the point discussed, we do not find indications of a directive in those pronouncements that the rule in all cases must be expressed in the form Merritt approves, 5 Moore's Federal Practice, Chapter 51, par. 51.06, page 2507.[6] Rather, it is essentially, notice, that a jury, must, under the substantive law of the state be informed of the conditions which are to be observed when the protection under the emergency rule may be invoked.
 
 
 79
 But how it is to be given or conveyed is a procedural matter, which is for the Federal trial court. Barron and Holtzoff, 2B Federal Practice and Procedure, Rules Edition, Section 1105, page 465 and cases there cited:
 
 
 80
 "In the manner and method of instructing the jury, federal courts follow their own rules, regardless of state practice and legislation. Substantially the federal courts follow the common law practice inherited from the English courts where it still prevails. The judge instructs the jury orally at the conclusion of the trial after the summing up arguments of counsel to the jury. Where a state-created right is to be enforced, of course the state law must be looked to for the substance of the instructions, but the form of instructions and the method of objecting to them are procedural questions as to which the federal court is not bound by state concepts. The Judicial Conference has strongly disapproved proposed legislation which would have required federal judges to conform to state procedure in instructing jurors."
 
 
 81
 Under these formulas we look to certain instructions, which are a part of the court's entire charge for the answer, those deemed pertinent having been numbered for convenient reference purposes.
 
 
 82
 (1) "It is the law in cases of this kind, that even though the defendants' negligence be proved, the plaintiff cannot recover if the deceased was guilty of negligence which proximately contributed in some degree to the accident. In layman's terminology, that means that the negligence of the one is cancelled off by the negligence of the other."
 
 
 83
 (2) "Now, the test here is the same as in determining the question of negligence on the part of the defendants; namely, did Mr. Simonson use ordinary care at and shortly prior to the accident? If he failed to use such care, then he was guilty of contributory negligence, and if that negligence contributed proximately to the accident, then the plaintiff cannot recover."
 
 
 84
 (3) "Every motor vehicle shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle."
 
 
 85
 (4) "If you find from the evidence that there had been a violation of any of these Minnesota statutes, which I have just read to you, those with reference to speed and those with reference to the brakes, I advise you that that is prima facie evidence of negligence. It just doesn't mean it is negligence come what will; it just means that that is a prima facie showing that negligence existed, and the other side may show that that reasonably wasn't negligence under the circumstances."
 
 
 86
 (5) "Now, there was some testimony here and argument of counsel with reference to the deceased at the time just before this accident happened, that he was faced with an emergency. It has been urged upon you and the evidence was received to the effect that just before the accident Mr. Simonson may have attempted to avoid the accident as best he could by attempting to turn over to the right. In connection with that, I advise you that if you find, in connection with that claim of contributory negligence, if you find from a preponderance of the evidence that Mr. Simonson was confronted with an emergency and was required to act quickly, it would not necessarily be negligence if he pursued a course which, to your reflection or judgment, might prove to be wrong. The law does not require, under such circumstances, that no mistake shall be made. All the law requires is that one conduct himself as an ordinarily careful and prudent person would have done under like circumstances; and if he does that, he is not guilty of negligence, even though he might have committed an error in judgment."
 
 
 87
 (6) "So those are the first three steps that you must take. Was there negligence? Was there proximate causation between that negligence and the accident? Was there contributory negligence which, in some degree, contributed or caused the accident?"
 
 
 88
 (7) "If you reach the point where you conclude that this deceased was himself negligent in some way, his brakes or look-out or speed, if you find that he was negligent and that that contributory negligence was a proximate cause of the accident, then, of course, that ends your deliberations and you should return a verdict for the defendants."
 
 
 89
 Negligence on the part of Simonson, operating as a proximate cause and therefore a bar to recovery, is the core of those instructions and the major impact of the whole charge. Explicit references to it are in (1), (2), (6) and (7), specific factors such as brake control and speed are referred to in (3) and (4), the route to be followed by the jury in arriving at its verdict, that is the "three steps", mentioned in (6), is detailed in other charges, all other elements entering into the creation of an emergency, are also explicitly covered, except the omission in the emergency instruction and implicit in the context of all three, there is clear basis for an assumption that the jury knew, it couldn't apply the emergency rule, if the peril created was the result of Simonson's own fault or negligence. Prosser on Torts, Section 32, page 138.[7] See also Ohran v. Yolo County, 40 Cal.App.2d 298, 104 P.2d 700:
 
 
 90
 "Instruction on duties of a person suddenly confronted with danger `through the negligence of another' was not erroneous as failing to include the element that situation was created through no negligence on the part of those seeking its benefits, since quoted phrase was equivalent in effect to `caused by the negligence of the defendant.'"
 
 
 91
 As against the claim of error in the instruction that the:
 
 
 92
 "Defendants were also required by law to exercise reasonable care to warn motorists of the operation of the road grader against the traffic",
 
 
 93
 the claim on this appeal that the court thereby usurped the functions of the jury, "inasmuch as no warning was given", and in effect told the jury it must find the defendants guilty of negligence, we need only observe that the answers are in the second and only other sentence in that instruction:
 
 
 94
 "Whether or not the defendants did exercise that reasonable care is for you, the members of the jury to determine".
 
 
 95
 We observe also, that the exception[8] did not specifically point to any prejudicial effect of the instruction. It mentioned only one of the common sense warning measures, which the jury may or could have considered as under the instruction consideration was given to reasonable care.
 
 
 96
 We find no merit either, in the appellants final contention on this appeal:
 
 
 97
 "Where the brakes of the decedent's car were applied hard, yet made no skid marks, it was error to refuse to instruct the jury on M.S.A. Sec. 169.67, Subd. 5, relating to brakes."[9]
 
 
 98
 Instead, the court, as appellants admit, gave the substance of that subdivision.[10]
 
 
 99
 This claim, involves fact questions which were for the jury as noted and rather extensively discussed and determined in other parts of this opinion.
 
 
 100
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 See also cases cited in the footnote to Corabi, No. 10, and as to distinctions between cases of guardians acting for a minor and an administrator or a trustee for the heirs of a deceased, the Comment: "Guardian and Ward — Whose Citizenship Controls When Determining Federal Diversity Jurisdiction * * *" Ia.Law Review, Vol. 45 No. 2, pages 408-413
 
 
 [2]
 "In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."
 
 
 [3]
 Exactly what Rule 78(a) is or where it is to be found is not explained. Context in the proceedings indicate that it had reference to that rule in Exhibit 31
 
 
 [4]
 The trial court's instruction on this precise point was as follows:
 "* * * Any comment that the court or counsel may make upon the evidence or any deduction they may draw therefrom is not in any way binding upon you and should not be accepted by you unless it coincides with your own recollection and construction of the evidence". (Emphasis supplied.)
 See generally 5 Moore's Federal Practice, Chapter 51, par. 51.05, page 2506 and Terminal Railroad Ass'n of St. Louis v. Staengel, 8 Cir., 122 F.2d 271, 136 A.L.R. 789 (1941), cert. den. 1941, 314 U.S. 680, 62 S.Ct. 181, 86 L.Ed. 544.
 
 
 [5]
 "When one is placed by the negligent act of another in such a position that he is compelled to choose upon the instant and in the face of apparent and great impending peril between different hazards, and he makes such a choice as a person of ordinary prudence, placed in the same situation, would probably have made, and injury results therefrom, the fact that if he had chosen the other hazard he would have escaped injury does not show negligence."
 
 
 [6]
 "A party has no vested interest in any particular form of instruction. This is true, even though the proffered prayer may be unobjectionable in itself, the language of the instructions is for the trial court to determine. If on the entire charge it appears that the jury has been fairly and adequately instructed, the requirements of the law are satisfied * * *." Cohen v. Evening Star Newspaper Co., 72 App.D.C. 258, 113 F.2d 523 (1940)
 
 
 [7]
 The author as he discusses "emergency" doctrine, appears to treat"his own negligence" and "his own fault" as synonymous or interchangeable as the comment is made:
 "Furthermore, it obviously cannot serve to excuse the actor when the emergency has been created through his own negligence, since he cannot be permitted to shield himself behind a situation resulting from his own fault. (Emphasis supplied).
 
 
 [8]
 The form of that exception, after the argument and after the court had given its instructions to the jury, was as follows:
 "Defendants have another exception and that is to the instruction that states the defendants were required to exercise ordinary care to warn people of the grades blading against traffic, or words to that effect. I believe this is telling the jury we had to do something by flags or something or other, and I think that's something, the very question for the jury if this was negligence as we did it instead of being told we had to do something."
 
 
 [9]
 M.S.A. § 169.67, Subd. 5 is referred to in another part of the opinion
 
 
 [10]
 That instruction is also referred to in another part of this opinion