Clyde **DUFFY**, as Trustee for the heirs of Selma DuBois, Deceased, Plaintiff,

v.

**Jerome J. CURRIER**, Defendant.

No. 4–67 Civ. 378.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 29, 1968.

Callinan, Raidt, Haetzen & Ramier, by George Ramier, Minneapolis, Minn., for plaintiff.

Donald A. Hausler, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

This is a wrongful death action brought by a Minnesota court-appointed trustee for the benefit of the survivors of the decedent, Selma DuBois. The trustee so appointed is a resident of the State of North Dakota. The defendant is a resident of the State of Minnesota as was decedent, while decedent's survivors are stated in the complaint to be residents of North Dakota. The automobile accident which gives rise to this

action occurred on or about September 10, 1967 in the State of Wisconsin.

Defendant by answer and by separate motion prays for dismissal of the action on the ground (1) that the court lacks jurisdiction over the parties and the subject matter thereof and (2) that plaintiff lacks authority to sue in a representative capacity and hence is not a proper party and so the complaint fails to state a claim upon which relief can be granted.

Plaintiff also has addressed a motion to the court. It appears that upon the taking of defendant's oral discovery deposition defendant, after a few preliminary questions and on the advice of counsel refused to answer questions pertaining to the automobile accident here involved. His refusal was based on the ground that his answers might tend to incriminate him. He thus claimed the protection of the Fifth Amendment to the United States Constitution. Plaintiff requests that defendant be compelled to answer.

The first question raised is lack of jurisdiction in this court. Plaintiff bases his claim of jurisdiction on Title 28 § 1332—diversity of citizenship and more than $10,000 in controversy. It would appear that the requisite amount of $10,000 is involved. The quaere is whether the named plaintiff, a resident of North Dakota, has been appointed trustee solely for the purpose of "manufacturing" a diversity of citizenship which would not otherwise exist; and if so, does such violate 28 U.S.C. § 1359 which prohibits sham diversity techniques. It is uncontested that the named plaintiff-trustee is a bona fide resident of North Dakota. By affidavit he states that he is an attorney who has practiced law more than 50 years in or near Devils Lake, North Dakota adjacent to the Sioux Indian Reservation; that the decedent was an Indian, as are the survivors, and all live in North Dakota; that he was consulted by the father of the decedent relative to the death of decedent, and was asked by him to secure custody of one of the grand-

children; that affiant declined to represent the survivors in the death case "because of possible venue problems" but consented to serve as trustee.

 Federal courts are of limited statutory jurisdiction. Absent the statutory requirements the state courts are the proper forum. The burden is upon the one asserting it affirmatively to sustain diversity jurisdiction; yet a party asserting collusive jurisdiction must prove that such is the case. See County of Todd, Minn. v. Loegering, 297 F.2d 470 (8th Cir.1961); Bradbury v. Dennis, 310 F.2d 73 (10th Cir.1962). Under this view, no such evidence of collusion has been adduced here and the motion to dismiss on this ground is denied.

A number of cases in the Eighth Circuit shed light on this subject. In County of Todd, Minn. v. Loegering, 297 F.2d 470 (8th Cir.1961) the state court appointed the named plaintiff, a married daughter of the deceased, as substitute trustee in place of the deceased's widow who had resigned. Notwithstanding the fact that the daughter was a Montana resident while the widow and defendants were Minnesota residents, both the trial court and the circuit court sustained jurisdiction. The *Loegering* case is controlling on the case at bar. See also Janzen v. Goos, 302 F.2d 421 (8th Cir. 1962); McCoy v. Blakely, 217 F.2d 227 (8th Cir. 1954).

 Two recent Third Circuit cases, McSparran v. Weist, 402 F.2d 867 (3rd Cir. Oct. 2, 1968) and Esposito v. Emery, 402 F.2d 878 (3rd Cir. Oct. 2, 1968), expressly overruled that circuit's prior decision of Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3rd Cir. 1959) and held that artificially creating diversity by choosing a guardian in another state is violative (at least prospectively) of 28 U.S.C. § 1359. Perhaps since the Eighth Circuit in *Loegering*, supra, as well as the Second Circuit in Lang v. Elm City Construction Co., 324 F.2d 235 (2d Cir. 1963) and others have relied on *Corabi*, supra, there may be room for doubt ultimately that *Loe-*

*gering* will be followed. To this court, the Third Circuit opinion is persuasive. It is recognized, however, that this court is governed by existing Eighth Circuit cases until, if at all, such are overruled. In any event, in the case at bar plaintiff has made a showing that no collusion or sham was intended and that he has and has had a substantial relationship to the decedent's survivors other than one of mere convenience for the bringing of suit. Further, if the prohibition of *McSparran* and *Esposito* is to prevail, it should be prospective and not retroactive. The court therefore rules that it has jurisdiction over the parties and the subject matter of this litigation.

The second issue relates to defendant's argument that since there was no so-called wrongful death action at common law and the action is solely a creation of statute, plaintiff must bring himself within the statute in the state where the death occurred, i.e., Wisconsin, which he has failed to do. Defendant claims the rule of *lex loci* requires that the wrongful death statute of Wisconsin governs this case; that under that law the action may be brought only by the personal representative of the deceased person or by the person to whom the amount of recovery belongs and not by a trustee such as is appointed in Minnesota. Wis.Stat. § 895.04(1). Defendant thus claims that the action must be dismissed on the grounds that the plaintiff is not a proper party plaintiff and the complaint thus fails to state a claim upon which relief can be granted.

Plaintiff alleges that Minnesota law must be applied and that under Minn. Stat. § 573.02 (as amended Laws 1967 c. 158) the action may be brought by a trustee appointed for that purpose. The inquiry is thus into conflict of laws.

■ It is too clear to refute that in diversity cases, this court applies the law of the appropriate state. This means that this court must begin with the Minnesota conflict of laws rules as stated by the highest court of the state.

Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941).

■ Minnesota has rejected the rule of *lex loci* and has adopted the rule that its courts will apply the law of the state having the most significant contacts with the parties and the subject matter of the lawsuit. Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957). It is noted that the Wisconsin law of conflicts is substantially the same. Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965). Other jurisdictions have similar holdings. Watts v. Pioneer Corn Co., 342 F.2d 617 (7th Cir. 1965) (Indiana law); Merchants Nat. Bank and Trust Co of Fargo v. United States, 272 F.Supp. 409, 420 (D.N.D. 1967) (South Dakota law); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967).

While this rule does not require an arithmetic counting of the number of contacts each state has had with the parties and the subject matter at issue, it does require a weighing of the interests and contacts involved. Acting as this court believes a Minnesota court would, it seems clear that Minnesota law should and does apply. The defendant is a resident of Minnesota as was the decedent. The trip during which the accident involved occurred began and was intended to terminate in Minnesota. The named plaintiff while not a resident of Minnesota likewise is not a resident of Wisconsin. Indeed the only contact with Wisconsin is the fortuitous happening of the accident there. Under the current trend of conflict of laws, this fact alone is no longer sufficient to require application of Wisconsin law.

■ From the above it follows that such wrongful death right of action as plaintiff has arises from the Minnesota statute, Minn.Stat. § 573.02 and not

from the Wisconsin statute. The case is properly brought in this court.

A somewhat troublesome question arises on plaintiff's motion for an order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure compelling the defendant to answer questions proffered to him at his oral deposition relating to the automobile accident which is the subject matter of this lawsuit. Defendant refused to answer under the Fifth Amendment of the United States Constitution, asserting his right against self-incrimination "upon advice of counsel." Defendant in his answers to written interrogatories posed pursuant to Rule 33 has admitted the driving of the car, the use of "four or five beers" and some other matters. He answered that he did not know or did not recall as to many other questions such as the speed at which he was driving, how the accident happened, et cetera. Presumably there are scene of the accident reports of the police officers or highway patrolmen available. If defendant is required to answer further questions during his oral deposition, assuming he answers honestly, conceivably he might have to admit to an excessive rate of speed, to intoxication or to other facts which possibly could lay him open to a criminal prosecution for negligent homicide or recklessness causing the decedent's death. The prosecuting attorney in the county where the accident occurred apparently has written a letter to plaintiff's counsel to the effect that though he has no present intention to prosecute defendant, he has no power or authority to grant him immunity.

Generally, facts concerning questions of civil liability are outside the scope of the privilege against self-incrimination; but the privilege may be asserted in any civil proceeding or pretrial examination where there is a reasonable apprehension of criminal prosecution. McCarthy v. Arndstein, 266 U. S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); Lowe's of Roanoke, Inc. v. Jefferson Standard Life Ins. Co., 219 F.Supp. 181, 189 (S.D. N.Y.1963); 8 Wigmore on Evidence §§ 2252 at 327 n. 22, 2254 at 331, and 2257 at 339 (McNaughton rev. 1961). 8 Wigmore on Evidence, supra, at 339 states:

"The mere fact that a civil liability also inheres in the same act does not override the criminal liability, for it would not be possible to disclose the former without also disclosing the latter. * * * [I]t causes hardship to civil parties who are in no wise interested in the criminal aspect of their opponents' conduct and yet are by that circumstance balked of discovery of their civil wrongs. Nevertheless, the doctrine is unquestioned."

This privilege against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); Bouschor v. United States, 316 F.2d 451, 458 (8th Cir. 1963).

In view of the fact that there was a death in this case, that the defendant admitted drinking beer and driving the car involved in the accident in his answers to interrogatories and the liberal application which the privilege has been accorded, the court cannot say that there was no danger of self-incrimination. It follows, therefore, that the assertion by defendant of his privilege against self-incrimination at the oral deposition will be sustained.

Plaintiff argues that by answering the written interrogatories posed by plaintiff, defendant has waived his privilege. This argument is without merit and the court does not believe these answers to the interrogatories constitute a general waiver of the Fifth Amendment privilege, except to the extent and scope to which the answers therein contained may be used in any subsequent trial or other proceedings. The situation is not similar to a criminal case where the defendant takes the witness stand and by so doing waives the privilege and is subject to broad questioning and cross-examination. The defendant in a civil case such as this

may make partial answers and not thereby be required to answer more if it appears to the court that to answer more involves a reasonable chance or danger that the balance of the answer or further answers may be incriminating.

There is substantial authority that any waiver of the privilege is limited to the particular proceedings involved, and that voluntary testimony in a preliminary or separate proceeding is not a waiver for the main trial. United States v. Goodman, 289 F.2d 256, 259 (4th Cir.1961); In re Neff, 206 F.2d 149, 152, 36 A.L.R.2d 1398 (3rd Cir. 1953); Poretto v. United States, 196 F. 2d 392, 394 (5th Cir. 1952); 8 Wigmore on Evidence § 2276 at 470–72 (McNaughton rev. 1961). We need not decide here whether the answer to interrogatories in pre-trial discovery under oath is a separate and distinct pre-trial proceeding, and different than, the subsequent deposition of the defendant and still later the trial. Assuming defendant had answered in a deposition as he did in the interrogatories, anything attempting to go beyond such clearly would be privileged in this court's opinion if it tended toward incrimination.

Rule 26(a) of the Federal Rules of Civil Procedure provides that "[a]ny party may take the testimony of any person, including a party, by deposition upon oral examination" and Rule 26(b) states that such a party "may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." The defendant in a civil case such as this may be required to attend the deposition, to be sworn under oath and to make partial answers until there is a reasonable chance or danger that the balance of the answer may be incriminating. In re Turner, 309 F.2d 69, 71 (2nd Cir. 1962); de Antonio v. Solomon, 41 F.R.D. 447 (D.Mass.1966); 8 Wigmore, supra, § 2268 at 411. The witness, of course, may stop before the answers actually tend to incriminate him. A witness may stop answering if he believes and the court finds that a truthful response would provide " * * * a link in the chain of evidence * * * " needed to prosecute him. Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 224, 95 L.Ed. 170 (1950). Yet, "the possibility of inadvertent waiver, which is reduced to a minimum where counsel is present, [does not] justif[y] the extension of the privilege in violation of the rights of the other party and in derogation of the fact-finding policy of the Federal Rules of Civil Procedure." United States v. Matles, 247 F.2d 378, 383 (2nd Cir. 1957) (concurring opinion of Lumbard, J.).

The Federal Rules contemplate that there be "full and equal mutual discovery in advance of trial" so as to prevent surprise, prejudice and perjury. "It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses." 4 Moore, Federal Practice ¶ 26.02[2] at 1034–35. The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party. At the trial of this case the court will be attentive to any such effort.

The privilege against self-incrimination may be claimed at any time and in any proceedings if it appears that there is danger of incrimination. Defendant has done this and despite such effect as it may have on the pending civil action, he is entitled to do so. The court is not asked at this time to pass upon and so does not opine as to the effect at the trial of the failure and refusal of defendant to answer and as to whether any inference may be drawn by the jury or what if any action the court should take at the trial if defendant is called for cross-examination. It is true that in the deposition plaintiff did not, as good practice might dictate, ask specific questions of defendant one after the other so that the court might have before it precise questions upon which to rule. It is a fair inference, however, that if de-

fendant had not refused to answer, plaintiff would have inquired further about the accident and how it occurred. The court therefore believes it can rule with the same effect as though a series of specific questions had been posed in the deposition. Since plaintiff did not make a complete record, the court does not feel justified in ordering a resumption of the deposition merely on the ground that plaintiff might have asked, or might ask, certain non-incriminating questions. He had an opportunity to do this.

A separate order has been entered.