ANDREE J. MEYER, Formerly ANDREE J. METZKER, Petitioner, v. THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE (DEPT. NO. 5 THEREOF, THE HONORABLE WILLIAM N. FORMAN, DISTRICT JUDGE, PRESIDING); and JOHN G. METZKER, Real Party in Interest, Respondents.

No. 10688

February 28, 1979                    591 P.2d 259

*Raggio, Walker & Wooster,* and *Michael Lindell,* Reno, for Petitioner.

*Swanson, Swanson & Capurro,* Reno, *Walther, Key, Maupin & Oats,* Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

This is an original petition for a writ of prohibition to enjoin the enforcement of an order entered in the Second Judicial District Court. Petitioner seeks to bar the enforcement of the district judge's order preventing her from testifying at a child custody hearing unless petitioner answers certain questions, under specified conditions, propounded during discovery.

### THE FACTS

Petitioner and respondent John G. Metzker, real party in interest, were divorced in March, 1976. Petitioner was awarded custody of the couple's three children, then age 5, 8, and 10. On February 10, 1978, repondent Metzker filed a motion to modify the decree of divorce to award custody of the children to him, on the ground of material changes in the circumstances of the parties and the children. He alleged that since the decree of divorce he had remarried, purchased a home, and rearranged his business affairs so as to have more time to devote to his children. He further alleged that petitioner's relationship with the children had deteriorated, and that she was not providing a "stable, constructive and moral atmosphere and environment" for the proper rearing of the children.

Pursuant to a court order, petitioner and her present husband appeared for deposition. On advice of counsel, petitioner refused to answer any questions relating to her use or purchase of drugs; the presence of drugs in her home; the use of drugs by

friends or acquaintances in her home or in her presence. In response to all such questions, petitioner invoked the privilege against self-incrimination. Her present husband took the same position during his deposition on the same day.

Respondent Metzker subsequently moved for an order compelling discovery; an order preventing petitioner or her present husband from testifying at the hearing, or, alternatively, granting respondent Metzker's motion for modification. Following a hearing, the court entered an order providing that the motion for an order preventing petitioner from testifying at the hearing

> is hereby granted unless [petitioner] elects to answer the questions propounded to her at the deposition. In the event [petitioner] elects to answer such questions, the Court will enter an order that the deposition be conducted with no one present except the court reporter, the parties and counsel for the parties, and that her testimony be sealed and disclosed only to the court, counsel and the parties.

## THE COURT'S JURISDICTION

Petitioner argues that the order in question imposes a penalty for the exercise of her constitutional privilege against self-incrimination,[1] and thus was an act in excess of jurisdiction under Spevack v. Klein, 385 U.S. 511 (1967) (disbarment for exercise of Fifth Amendment privilege unconstitutional).

Petitioner also contends that the order was improper under the Nevada Rules of Civil Procedure, which authorize discovery only of matters not privileged. N.R.C.P. 26(b)(1). She relies particularly upon the discussion of court-imposed sanctions, in civil cases, for the exercise of the Fifth Amendment privilege found in 8 Wright & Miller, Federal Practice and Procedure: Civil § 2018 (1970).

The courts of many jurisdictions have applied sanctions in civil cases for the refusal of a party to respond to relevant questions, even though such refusal may have been based upon a legitimate invocation of the privilege against self-incrimination.[2] Commentators have urged the courts to devise remedies

---

[1] As to a majority of the questions which petitioner refused to answer, respondents do not question the legitimacy of petitioner's invocation of the Fifth Amendment. We therefore assume, arguendo, that the invocation of the privilege was legitimate.

[2] Appellate courts have, for instance, upheld dismissal of plaintiffs' complaints, generally on equitable principles, when such plaintiffs have invoked the Fifth Amendment privilege during discovery. E.g., Lyons v. Johnson, 415 F.2d 540 (9th Cir. 1969); Minor v. Minor, 240 So.2d 301 (Fla. 1970) (rejecting contention that Spevack required reversal of its prior rule); Christenson v. Christenson, 162 N.W.2d 194 (Minn. 1968); Franklin v. Franklin, 283 S.W.2d

which would accommodate the constitutional safeguards of the privilege, while not permitting its invocation to thwart the purposes and policies of the discovery rules. *See, e.g.,* M. Kaminsky, Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis, 39 Brook. L. Rev. 121 (1972); P. Donnici, The Privilege Against Self-Incrimination in Civil Pre-Trial Discovery: The Use of Protective Orders to Avoid Constitutional Issues, 3 U.S.F. L. Rev. 12 (1968).

The order of the trial court in this case was carefully designed to accommodate both the constitutional policies underlying the Fifth Amendment and the legitimate purposes sought to be served by the rules of discovery. An analysis of the order demonstrates that petitioner's constitutional privilege against self-incrimination was not abrogated. What petitioner actually seeks in this extraordinary writ proceeding is a declaration by this court that petitioner had an absolute right to waive the privilege at any time, regardless of prejudice to the other party or of the obvious circumvention of the policies of the rules of civil procedure which such a holding would encourage. As recently noted by a California appellate court, "Such a strategy subjects the opposing party to unwarranted surprise. A litigant cannot be permitted to blow hot and cold in this manner." A & M Records, Inc. v. Heilman, *supra,* 142 Cal.Rptr. at 398.

The court below did not preclude petitioner from presenting evidence on her behalf related to her fitness or that of repondent Metzker. Nor did the court purport to order petitioner to answer the questions directed to her at deposition. The court thus followed the cases, relied upon by petitioner, which have held that a motion to compel discovery should be denied when the deponent legitimately invokes the Fifth Amendment privilege. *E.g.,* Duffy v. Currier, 291 F.Supp. 810 (D.Minn. 1968); de Antonio v. Solomon, 42 F.R.D. 320 (D.Mass. 1967);

483 (Mo. 1955); *see* Henson v. Citizens Bank of Irving, 549 S.W.2d 446 (Tex.Civ.App. 1977) (reversing solely on ground that plaintiff had not been given option of changing position prior to dismissal).

Courts have also ordered or authorized sanctions against defendants for refusing to answer questions during discovery or trial on Fifth Amendment grounds. *E.g.,* Rubenstein v. Kleven, 150 F.Supp. 47 (D.Mass. 1957) (related defenses precluded); A & M Records, Inc. v. Heilman, 142 Cal.Rptr. 390 (Cal.App. 1977), *appeal dismissed* and *cert. denied sub nom.* Heilman v. A & M Records, Inc., 436 U.S. 952 (1978) (production of documents and certain testimony precluded); Costanza v. Costanza, 328 A.2d 230 (N.J. 1974) (testimony precluded); Levin v. Levin, 322 A.2d 486 (N.J.App. 1974) (suppression of related defense); Berner v. Schlesinger, 178 N.Y.S.2d 135 (Sup.Ct. 1957), *aff'd* 175 N.Y.S.2d 579 (App.Div. 1958) (striking testimony); Annest v. Annest, 298 P.2d 483 (Wash. 1956) (striking testimony).

180

Lowe's of Roanoke, Inc. v. Jefferson Standard Life Ins. Co., 219 F.Supp. 181 (S.D.N.Y. 1963); Federal Deposit Insurance Corp. v. Logsdon, 18 F.R.D. 57 (W.D.Ky. 1955); Zonver v. Superior Court, 76 Cal.Rptr. 10 (Cal.App. 1969); Townsend v. Northcutt, 173 S.E.2d 470 (Ga.App. 1970).

What the court did order was that if petitioner chose not to respond to the questions at deposition, under protective measures which the court indicated would be taken, petitioner would not later be permitted to testify. This result would follow if petitioner should persist, throughout the hearing, in maintaining her right to invoke the Fifth Amendment, or should refuse to answer such questions for any reason. *See* 5 Wigmore, *Evidence* § 1391 (Chadbourn rev. 1974). Viewed from this perspective, we do not find that the order either imposes a penalty in violation of *Spevack,* or levies a sanction under the rules of civil procedure. It binds petitioner to her choice, while advising her of the consequences.

The courts have consistently held that the constitutional mandates of the Fifth Amendment do not preclude the courts from determining that a party who volunteers to testify in a civil matter must either waive the privilege, or accept the consequence that such testimony will be stricken from the record. Brown v. United States, 356 U.S. 148 (1957); Berner v. Schlesinger, *supra* [178 N.Y.S.2d 135 (Sup.Ct. 1957), *aff'd* 175 N.Y.S.2d 579 (App.Div. 1958)]; Annest v. Annest, *supra* [298 P.2d 483 (Wash. 1956)]; 8 Wigmore, *Evidence* § 2276 (McNaughton rev. 1961); Note, Use of the Privilege Against Self-Incrimination in Civil Litigation, 52 Va. L. Rev. 322, 336 (1966). As the high court noted in *Brown,* "when a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. . . . Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all." 356 U.S. at 155.

In the case at hand, the questions which petitioner has refused to answer go to the heart of the major issues before the court; her fitness, and the fitness of the children's father and his present wife, to serve as custodial parents of the couple's three minor children. As the Supreme Court of Minnesota observed when faced with a similar refusal by a mother to answer questions, on Fifth Amendment grounds, which related directly to

her alleged misconduct as a wife and mother; "a person ought not to be permitted to divulge only that part of the story favorable to his or her position and thus present a distorted and misleading picture of what has really happened." Christenson v. Christenson, *supra*, 162 N.W.2d [194], 202 [(Minn. 1968)].

In Costanza v. Costanza, *supra* [328 A.2d 230 (N.J. 1974)], the Supreme Court of New Jersey upheld an order such as the one issued by the court in this case. The New Jersey lower court had denied plaintiff's motion for an order compelling discovery or for summary judgment, but had provided that the defendant in the civil action be precluded from testifying if she persisted in her refusal to answer questions at deposition. The appellate court held that "If [the defendant] is going to testify, then in all fairness the plaintiffs should have her deposition before trial so that they may properly prepare and avoid trial surprises which frustrate rather than aid the search for truth and justice." 328 A.2d at 232.

Similarly, the federal district court in Duffy v. Currier, *supra,* while denying plaintiff's motion to compel discovery, explained that it would not allow a subsequent waiver at trial, in contravention of the policies of the rules of civil procedure:

> The Federal Rules contemplate that there be "full and equal mutual discovery in advance of trial" so as to prevent surprise, prejudice, and perjury. "It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses." 4 Moore, Federal Practice ¶ 26.02(2) at 1034–35. The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.

291 F.Supp. at 815.

Indeed, Wright and Miller, upon whose position petitioner relies, have urged the courts to apply exactly the remedy chosen by Judge Forman. They note that "if a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered." 8 Wright & Miller, *supra* [Federal Practice and Procedure: Civil § 2018 (1970)], at 149.

We conclude that the court's order in this case effectuates the policies underlying the discovery provisions of the Nevada Rules of Civil Procedure, without compromising the prerogative of petitioner to insist upon her right to refuse to disclose information which might tend to incriminate her. The court

went further in providing that should petitioner choose to respond at deposition, only the court, parties and counsel would have access to the information thus disclosed. The district judge did not exceed his jurisdiction. While petitioner may have a constitutional right to claim the privilege, she has no constitutional right to choose the time at which such privilege may be waived, to the prejudice of the opposing party and in derogation of the discovery policies of the Nevada Rules of Civil Procedure.

Therefore, the petition for the writ of prohibition is denied.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.