## In re EQUITY LAND TITLE AGENCY, INC., Debtor.

John Paul Rieser, Chapter 7 Trustee, Plaintiff,

v.

Steven L. Clayton Joanne Clayton, Defendants.

Bankruptcy No. 02–34260.
Adversary No. 04–3148.

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

June 24, 2005.

J. Michael Debbeler, Esq., Graydon, Head and Ritchey, Cincinnati, OH, for the Defendants, Union Savings Bank & The Cincinnati Insurance Company.

Arthur R. Hollencamp, Esq., Dayton, OH, for National City Bank.

Bryan K. Stewart, Esq., Tipp City, OH, for Monroe Federal Savings & Loan Association.

Robert G. Sanker, Esq., Brian P. Muething, Esq., Cincinnati, OH, for the Defendant, Fifth Third Bank.

Joel E. Sechler, Esq., Timothy R. Bricker, Esq., Columbus, OH, for Olympic Title Insurance Company.

Timothy J. Robinson, Esq., P. Brian See, Esq., Columbus, OH, for First American Title Insurance Company.

Dennis A. Lieberman, Esq., Dayton, OH, for Defendants.

## DECISION ON ORDER GRANTING MOTION OF TRUSTEE TO STRIKE DEFENDANT'S AFFIDAVIT

THOMAS F. WALDRON, Chief Judge.

### Background

On June 7, 2002, an Order For Relief (Estate Doc. 7) was entered against Equity Land Title Agency, Inc. ("ELT"), which had been the object of an involuntary petition. (Estate Doc. 1) Steven L. Clayton was the president, director and majority or sole shareholder of ELT. (See Adv. Doc. 1 and Paragraph 4 of the Amended Answers—Adv. Docs. 20 and 21) On June 4,

2004, John Paul Rieser, the appointed Chapter 7 Trustee, (the "Trustee"), filed this adversary proceeding against Steven L. Clayton and Joanne Clayton (collectively, the "Defendants"). (Adv.Doc. 1) Joanne Clayton was and is Steven Clayton's wife. (See Adv. Doc. 1 and Paragraph 6 of Adv. Docs. 20 and 21)

The Trustee's complaint seeks relief in connection with a number of avoidance claims under the Bankruptcy Code as well as claims under Ohio law. The Defendants originally filed blanket denials as to all of paragraphs of the Trustee's complaint. Joanne Clayton asserted a spousal privilege and Steven Clayton asserted the privilege against self-incrimination afforded by the Fifth Amendment of the United States Constitution. (Adv. Docs. 10 and 11)

On October 26, 2004, the Trustee filed a *Motion of Plaintiff for a More Definite Statement Regarding Defendant Steven Clayton's Answer Combined With Memorandum In Support and Notice to All Parties in Interest* (Adv.Doc. 12) and a *Motion of Plaintiff to Strike Defendant Joanne Clayton's Answer For Failure to Comply With Fed. R. Civ. Pro. 8(b) or in the Alternative, Motion for a More Definite Statement Regarding Defendant's Answer, Combined With Memorandum In Support and Notice to Parties in Interest.* (Adv.Doc. 13) On November 1, 2004, the court issued *Order Setting Pretrial Conference, Setting Unresolved Motions, if any, Ordering Other Matters and Requiring the Attendance of Steven L. Clayton and Joanne Clayton.* (Adv. Doc. 14; underlining in original) In that order, the court noted, while recognizing the *pro se* status of the Defendants, that:

> The Court enters the following observations, without, at this time, any determination of any pending issues.

The Court recognizes that long standing Sixth Circuit law requires this Court to apply "less stringent standards" in connection with certain pleading requirements to parties appearing without counsel, such as the Defendants, Steven L. Clayton and Joanne Clayton; nevertheless, certain basic pleading requirements and certain clear and specific orders of a Court must be complied with and failure to do so may result in the imposition of sanctions, including, in some instances, the entry of default judgments. *Rogers v. Webster,* 776 F.2d 607 (6th Cir.1985); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996).

Additionally, the Court recognizes that the Defendant, Steven L. Clayton, has asserted certain rights, arguably available to him pursuant to the Fifth Amendment of the United States Constitution, and Joanne Clayton has asserted certain rights, arguably available to her pursuant to certain spousal privileges. The Court suggests that each of these parties may benefit from the services of an experienced bankruptcy attorney, since the blanket assertion of either a Fifth Amendment claim or a spousal privilege would not appear to excuse a party from compliance with certain basic pleading requirements, nor excuse a failure to appear in response to a specific court order. Bankruptcy Rule 7008 and 7010 (See *Rogers v. Webster,* 776 F.2d 607, 611 (6th Cir.1985); *North River Ins. Co. v. Stefanou,* 831 F.2d 484, 486–487 (4th Cir.1987)); See also *In re Carmean,* 153 B.R. 985 (Bankr.S.D.Ohio 1993).

After the Defendants failed to respond, the Trustee's motions (Adv. Docs. 12 and 13) were granted. (See Orders—Adv. Docs. 16 and 17)

The Defendants did subsequently file amended answers on December 2, 2004. (Adv. Docs. 20 and 21) In the amended answer of Joanne Clayton, the Fifth Amendment, as well as the spousal privilege was asserted. (Adv.Doc. 20) Steven Clayton continued to assert the Fifth Amendment. (Adv.Doc. 21)

A pretrial conference, attended by the Trustee and Steven and Joanne Clayton, was held December 21, 2004. In that pretrial conference, the court, without reaching any determination, specifically informed the Defendants that their blanket refusals to participate in *any* discovery based on the Fifth Amendment or spousal privilege may not be appropriate.[1] This was memorialized in a December 22, 2004 Order (Adv.Doc. 22), in which, among other things, the court noted:

> The Court recognized, and discussed with the *pro se* Defendants their assertions of Fifth Amendment protection and spousal privilege. The *pro se* Defendants advised the Court that they were represented by Dennis A. Lieberman, but only with regard to issues involving criminal proceedings and not this bankruptcy proceeding; however, the Court suggested to the Defendants that blanket assertions of either the Fifth Amendment or spousal privilege may not be appropriate responses to specific discovery requests by the Trustee. The Court is mailing a courtesy copy of this Order to the *Pro Se* Defen-

dant's criminal counsel and suggests the *pro se* Defendants review with him, or other counsel of their choice, the Trustee's requests and, attempt, to the extent possible, to find an agreed resolution which will neither impair the *pro se* Defendants asserted rights, nor necessarily result in adverse consequences for the *pro se* Defendants in this bankruptcy proceeding. The Court will review these matters at the pretrial conference scheduled pursuant to this Order.

The court set a non-expert discovery cutoff of March 31, 2005 and set a further pretrial conference for April 14, 2005.

On January 17, 2005, the Trustee requested permission to file a motion for partial summary judgment. (Adv.Doc. 26) After notice and, again, no response from either Defendant, the motion was granted. (Adv.Doc. 28)

On February 28, 2005, the Trustee filed the Motion for Partial Summary Judgment. (Adv.Doc. 32) On March 21, 2005, the Defendants filed separate responses to the Motion for Partial Summary Judgment. (Adv. Docs. 39 and 40) The document signed by Joanne Clayton is captioned as a response for both Defendants, but is not signed by Steven Clayton. (Doc. 39) It includes an affidavit of Joanne Clayton which challenges the "flawed statements and conclusions" of the Trustee.[2] This affidavit is referenced in the response of Steven Clayton (Doc. 40)[3].

---

1. The court has independently reviewed the transcript of the December 21, 2004 pretrial conference.

2. The affidavit, *inter alia,* swears to the fact that Joanne Clayton had no knowledge of commingling or of the insolvency of ELT and generally denies the allegations of fraud. The court notes that although the defendant, Joanne Clayton, asserts in paragraph iv that the Court advised the defendants that they need not answer any requests for admissions, a review of the transcript of the December 21,

2004 hearing will establish no such statement was made. Instead, without making any findings, the court generally noted the Fifth Amendment protected the Defendants from exposure to criminal liability, but "the Fifth Amendment won't necessarily save you way down the line" from civil liability to the Trustee.

3. Without regard to the fact that Steven Clayton did not sign the affidavit, the court simply finds the affidavit is stricken in regard to both Defendants.

On March 29, 2005, The Trustee filed a document which included a reply brief as well as a separate motion to strike the aforementioned affidavit of Joanne Clayton. (Adv. Doc. 42—*Reply of Plaintiff to Defendant's Response to Motion for Partial Summary Judgment Combined with Motion of Trustee to Strike Defendant's Affidavit Combined with Notice Hereof*) At the April 14, 2005 pretrial conference, although the Trustee was present, neither of the Defendants appeared. At that time, although the court reviewed these issues with the Trustee and discussed with the Trustee the preparation of certain proposed orders, as a result of the failure of the Defendants to appear, the court has subsequently determined to enter its own decisions and orders on the pending issues. The Court notes that the Defendants have not filed any response to the Trustee's Motion to Strike.

### Issue

May the Defendants, who have asserted blanket privileges pursuant to the Fifth Amendment of the United States Constitution or asserted state law spousal privileges, refuse to respond to proper discovery requests during an adversary proceeding and, thereafter, in response to a motion for partial summary judgment, file in that same adversary proceeding an affidavit containing specific denials of the factual issues presented by the motion for partial summary judgment or must such an affidavit be stricken upon proper motion?

### DETERMINATION

■ Upon a proper motion, the Court must strike an affidavit, containing specific denials of factual issues, filed in response to a motion for partial summary judgment from a defendant who asserted spousal privilege and/or Fifth Amendment protec-tion and failed to respond to proper discovery requests.

### *Analysis*

■ The decision in *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989), although a nonbankruptcy case, is instructive. In that case, the driver of an automobile was shot by the police and received a large award in a civil lawsuit. The trial court did not permit the officer/defendant to testify at trial since he asserted his right to Fifth amendment protection during discovery. In affirming this ruling, the First Circuit noted:

> Trial courts have broad discretion in fashioning remedies during discovery. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). Discovery sanctions are appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* The viewpoint of *National Hockey League* was echoed in the advisory committee note to the 1983 amendment of Fed.R.Civ.P. 26: "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Courts have not been afraid to bar a party from testifying where doing so was necessary to prevent the "thwarting [of] the purposes and policies of the discovery rules." *Meyer v. Second Judicial Dist. Court, etc.*, 95 Nev. 176, 591 P.2d 259 (1979); *see Lyons v. Johnson*, 415 F.2d 540, 541–42 (9th Cir.1969), *cert. denied*, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970).

> The district court's decision to bar Soto from testifying at trial due to his previous refusal to testify during discovery is supported by ample precedent.

The Federal Rules contemplate that there be "full and equal mutual discovery in advance of trial" so as to prevent surprise, prejudice and perjury. "It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses." 4 Moore, Federal Practice 26.02[2] at 1034–35. The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pretrial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.

*Duffy v. Currier,* 291 F.Supp. 810, 815 (D.Minn.1968); *accord Rubenstein v. Kleven,* 150 F.Supp. 47, 48 (D.Mass. 1957), *aff'd on other grounds,* 261 F.2d 921 (1st Cir.1958) (defendant's claim of privilege during deposition precluded his testimony as to certain evidence at trial); *Costanza v. Costanza,* 66 N.J. 63, 328 A.2d 230, 232 (1974); *see also Bramble v. Kleindienst,* 357 F.Supp. 1028, 1035 (D.Colo.1973) (applying same sanction to a plaintiff), *aff'd,* 498 F.2d 968 (10th Cir.1974), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2018, at 149 (1970) ("[I]f a party is free to shield himself with the privilege during discovery, while having the full benefit of his testimony at trial, the whole process of discovery could be seriously hampered."). We find these cases persuasive.

The Supreme Court's reasoning in an analogous situation supports the constitutionality of the holdings cited above. In *Williams v. Florida,* 399 U.S. 78, 80, 90 S.Ct. 1893, 1895, 26 L.Ed.2d 446 (1970), the Court upheld a Florida notice-of-alibi rule requiring that a criminal defendant "submit to a limited form of pretrial discovery by the State whenever he intends to rely at trial on the defense of alibi." The Court stated:

> The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

*Id.* at 82, 90 S.Ct. at 1896 (footnote omitted in original).

The Court did not find that the Florida rule violated defendant's fifth amendment privilege.

> At most, the rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge at trial.
>
> \* \* \* \* \* \* \*
>
> We decline to hold that the privilege against compulsory self-incrimination guarantees the defendant the right to surprise the State with an alibi defense.

*Id.* at 85–86, 90 S.Ct. at 1898.

We find the principles enunciated by the *Williams* Court instructive in the case at bar. Soto made his decision not to give deposition testimony on August 24, 1987 and held that position throughout the next six months prior to trial. The district court's decision to bar Soto's testimony did not burden his due process rights, it merely forced him to abide by his decision and protected plaintiff from any unfair surprise at tri-

al. A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial. *See Bramble v. Kleindienst,* 357 F.Supp. at 1035–36 (citing *Lyons v. Johnson,* 415 F.2d at 541–42).

*Id.* at 576–77.

The 6th Circuit's decision *Traficant v. Comm'r,* 884 F.2d 258 (6th Cir.1989) provides further guidance in this area. In that case, the defendant invoked the Fifth Amendment rather than answer certain interrogatories concerning the authentication of a signed statement and certain tape-recorded conversations. The trial court limited cross-examination on those matters. The Sixth Circuit affirmed, but limited the trial court's legal holding:

> We believe it was proper under principles of reciprocity for the Tax Court to bar Traficant, once he had invoked the privilege against self-incrimination on the authenticity of the statement and the tapes, from introducing other evidence on *that matter.* Such limits are properly within the scope of cases holding that a party to civil litigation or other non-criminal proceedings may encounter costs imposed in exchange for the assertion of the Fifth Amendment privilege as long as they are not so high as to force abandonment of the privilege. *Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967); *see also Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Note, however, that when the issue is whether a court may impose broad limits on the admissibility of evidence, the cases permit only limits directly related to the scope of the asserted privilege. *Securities and Exchange Commission v. Cymaticolor,* 106 F.R.D. 545 (S.D.N.Y.1985); *In re Anthracite Coal Antitrust Litigation,* 82 F.R.D. 364 (M.D.Pa.1979).

*Id.* at 265.

It is significant that neither of the Defendants in this adversary responded to any discovery sought by the Trustee; but, rather, asserted a blanket Fifth Amendment or spousal privilege assertion in connection with all of the Trustee's proper discovery. Cf. *Traficant.*

It is clear from the allegations in the Trustee's complaint (Adv.Doc. 1), the combined discovery request by the Trustee, which was not responded to in any fashion by either Defendant (See Adv. Doc. 30—*Certification of No Response By the Defendants of Requests For Admission by the Trustee*—which includes, as an attachment, *Plaintiff, John Paul Rieser, Trustee's First Combined Set of Interrogatories, Request for Admissions and Request for Production of Documents to Defendant Joanne Clayton Pursuant to FRBP Rules 7033, 7034 and 7036* and a similar attachment concerning Steven Clayton), that the Defendants are attempting, through the affidavit filings (Adv. Docs. 39 and 40) to, for the first time assert, but still without any specificity, the central legal issues related to the Motion for Partial Summary Judgment are not correct; notwithstanding that each Defendant refused to supply any information in connection with such assertions throughout the entire discovery process.

■ While the court is cognizant of a motivating reason the Defendants have chosen to assert Fifth Amendment and spousal privilege protections in this adversary[4], parties cannot avail themselves of the shield of the Fifth Amendment and,

4. The Defendant Steven Clayton is currently the subject of criminal charges pending in Montgomery County.

having refused to respond to proper discovery requests, collapse, at moments of their choosing, that shield into a sword to be used to attempt to stab holes in the opponent's case. See generally Wright, Miller and Marcus, *Federal Practice & Procedure*, § 2018—Privilege Against Self–Incrimination (2005).

### Conclusion

The *Motion of Trustee to Strike Defendant's Affidavit* is **GRANTED**. An order in accordance with this decision will be simultaneously entered.

**SO ORDERED.**