# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3442

_____

Jane Doe,                                          *
                                                   *
   Appellant,                       *
                                                   *   Appeal from the United States
 v.                                            *   District Court for the Eastern
                                                   *   District of Missouri.
V. Leroy Young, M.D., an individual;               *
Robert Centeno, M.D., an individual;               *
C. B. Boswell, M.D., an individual;                *
Aesthetic Surgery Associates, Inc.,                *
a Missouri corporation, doing business             *
as Body Aesthetic Plastic Surgery &                *
Skin Care Center,                                  *
                                                   *
   Appellee.                        *

_____

Submitted: September 22, 2011
Filed: December 28, 2011

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

  Jane Doe sued Aesthetic Surgery Associates, Inc., doing business as Body Aesthetic Plastic Surgery & Skin Care Center (Body Aesthetic), and three of its surgeons—V. Leroy Young, M.D., Robert Centeno, M.D., and C.B. Boswell, M.D. (collectively, appellees)—claiming they invaded her privacy and breached the

fiduciary duty of confidentiality they owed to her when they gave nude photographic images of her body to a newspaper, which published the images. A jury found in favor of Doe on her breach of fiduciary duty claim and awarded her $100,000 in compensatory damages. Doe appeals and requests a new trial, claiming the magistrate judge[1] abused the court's discretion by excluding certain critical evidence that would have likely increased the verdict amount. We affirm in part, reverse in part, and remand for a new trial on punitive damages.

## I.    BACKGROUND
### A.    Facts[2]

Body Aesthetic is a Missouri corporation that performs aesthetic plastic surgeries. Dr. Young, Dr. Centeno, and Dr. Boswell were all surgeons at Body Aesthetic during the relevant time period. In September 2004, Doe consulted with Dr. Young about removing excess skin resulting from Doe's loss of approximately 150 pounds. Dr. Young recommended Doe undergo several surgical procedures—a belt lipectomy, a brachioplasty, and lipsocution of her legs. Doe agreed and scheduled the surgery.

That same day, in compliance with Body Aesthetic's policy, Doe allowed a Body Aesthetic employee to take photographs of her before and after her surgery. These photographs included nude images of Doe, which Doe was told were required and she understood would be used for her medical care.

---

[1]The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), hereafter referenced as the district court.

[2]"We recite the facts in the light most favorable to the jury's verdicts and afford [Doe] all reasonable inferences." Shelton v. Kennedy Funding Inc., 622 F.3d 943, 946 n.2 (8th Cir. 2010). The facts are mostly undisputed.

Body Aesthetic performed the surgeries in October 2004. Doe experienced complications during her recovery, including a staph infection. In August 2005, Doe sued the appellees for medical malpractice. The parties ultimately settled that suit.

In April 2006, the *Riverfront Times*, a Saint Louis, Missouri, area weekly newspaper, published—in print and on its website—an article entitled "Sultan of Skin." The article focused on Dr. Young and Body Aesthetic's practice, covering its more unusual procedures. The article contained before and after surgery nude frontal images of Doe from her shoulders to her knees. Accompanying the images was this caption: "A massive-weight-loss patient before a body lift to remove her pannus . . . and after." The article did not identify Doe and the images did not reveal her face.

The surgeons admittedly cooperated with *Riverfront Times* staff writer Kristen Hinman in her preparation for the article, but the surgeons claimed they believed the article was going to focus on "surgery for people who had had massive weight loss, not about [Body Aesthetic's] practice." In addition to granting Hinman interviews and access to their practice, the appellees gave Hinman a computer disk with a PowerPoint presentation. The presentation, which was originally created for an educational seminar taught by Dr. Young, included numerous patient photographs. Fourteen of the photographs were of Doe, comprising the images ultimately used in the article.

When Dr. Centeno first saw the article, he asked Hinman to remove the images. The *Riverfront Times* removed the images from its website, but told Dr. Centeno it was too late to remove the images from the print publication. Doe—who had by that time moved from Missouri to a suburb of Atlanta, Georgia—did not learn about the publication of the images of her body until May 2007, when her attorneys showed her a copy of the newspaper.

**B. Procedural History**

In February 2008, Doe sued the appellees in federal court, properly asserting diversity jurisdiction, and alleged five state-law claims, including (1) invasion of privacy and intrusion upon seclusion, and (2) breach of fiduciary duty. Doe sought compensatory and punitive damages.

In August 2008, the appellees served subpoenas and notices of deposition upon the *Riverfront Times*' custodian of records and Hinman. The subpoenas sought:

> A full and complete copy of all documents and/or materials in your possession, custody or control, used to prepare [the article] . . ., including . . . all contents of the file, all correspondence concerning the article or preparation thereof, emails, notes, memoranda, drafts, edits, tapes, recordings, digital copies, transcripts, journals, electronic diaries, and any other relevant materials.

The *Riverfront Times*, which was not a party to the suit, moved to quash the subpoenas and notices of deposition. The publication claimed they were overbroad and violated an alleged qualified journalist's privilege by seeking materials implicating the "*Riverfront Times*' research and investigation into the . . . story." The appellees opposed the motion. Doe remained silent.

Relying on Cont'l Cablevision, Inc. v. Storer Broad. Co., 583 F. Supp. 427, 435 (E.D. Mo. 1984), the district court found a qualified journalist's privilege required the court to "balance the competing interests involved by considering the relevance and materiality of the information, whether the party seeking the information has made reasonable efforts to obtain the information from an independent source, and whether there is truly a need for the information." The district court granted the *Riverfront Times*' motion to quash the discovery requests, concluding the appellees "alleged improper dissemination of the photographs contained in [Doe's] medical records [was]

-4-

the heart of the case, not the subsequent publication of the photographs," and "other sources of information ha[d] not been exhausted."

In March 2009, near the discovery deadline, Doe served the *Riverfront Times* with a subpoena, seeking documents and deposition testimony from a representative "concerning the receipt and publication of the image files" of Doe. The *Riverfront Times* again moved to quash, arguing the information was overbroad and part of the editorial process, infringing the alleged qualified journalist's privilege. The appellees joined the motion to quash.

This time, the district court concluded the qualified journalist's privilege did not shield the *Riverfront Times*. The district court found, unlike the appellees' earlier subpoenas, Doe's subpoena came at the end of discovery—after she had exhausted other sources—and did not invade the editorial process. Finding Doe had shown she could access this crucial information only through the newspaper, the district court denied in part the *Riverfront Times'* motion to quash, allowing Doe to question the *Riverfront Times* about its "receipt and use of the photographic image files in question."

The *Riverfront Times* designated Senior Art Director John Carlson as its corporate designee for purposes of the deposition. During the deposition, Carlson stated he believed the *Riverfront Times* had been unable to use the photographs from the PowerPoint presentation and therefore requested and received a second set of higher-resolution photographs from the appellees. Carlson speculated either Hinman or photographer Jennifer Silverberg requested these images.

Based on Carlson's comments, the appellees moved to reopen discovery in order to depose Hinman and Silverberg to find out "how *Riverfront Times* received the photographic image files." The *Riverfront Times* objected to reopening discovery. Doe did not. The district court reopened discovery for the limited purpose requested,

but reminded the parties they were "not permitted to seek any information relating to the *Riverfront Times*' editorial process relating to the content of the story with which the photo(s) in question appeared."

On June 2, 2009, the appellees deposed Hinman and both parties' attorneys asked her a variety of questions. Notably, no one asked Hinman whether anyone at Body Aesthetic told her not to use the photographs or whether she promised anyone from Body Aesthetic an opportunity to review her article before publication.

On October 23, 2009, Doe filed an amended witness list in compliance with Fed. R. Civ. P. 26(a)(3), listing Hinman as a potential witness. That same day, the appellees moved in limine to exclude certain evidence, including all testimony by Hinman not related to the alleged receipt of a second set of photographs. On November 6, 2009, the district court presided over a pretrial hearing to consider the appellees' motion. While reserving final judgment, the district court expressed an inclination to grant the appellees' motion, reasoning that allowing Hinman to testify regarding other topics could result in unfair surprise, as well as unnecessarily complicate the trial.

The trial began November 9, 2009. The appellees conceded they made a mistake in giving Hinman the PowerPoint presentation and trusting her with the photographs. The appellees repeatedly asserted they told Hinman she could not use the photographs and that she promised they could review and approve the article before it was published.

At trial, Doe called Hinman to testify regarding the circumstances surrounding her receipt of the photographs. The parties argued outside the presence of the jury regarding the appellees' motion to exclude Hinman's testimony. Acknowledging it was "a very close issue," the district court excluded Hinman's testimony, reasoning it would be an unfair surprise to the appellees. Doe made an offer of proof, presenting

-6-

Hinman's testimony in which she flatly denied the appellees' assertions that Hinman breached any agreement with respect to the use of photographs or publishing the article without their review.

Following a four-day trial, the jury returned a verdict in favor of Doe on her breach of fiduciary duty claim, but against Doe on her invasion of privacy claim. The jury awarded Doe $100,000 in compensatory damages, and no punitive damages. Doe moved for a new trial, arguing (1) the district court erred in excluding Hinman's testimony; (2) the district court erred by not allowing Doe to examine Dr. Young about Doe's settled medical malpractice case against the appellees in response to three instances where the appellees allegedly misrepresented the facts; and (3) the jury verdict against Doe on the invasion of privacy claim was against the greater weight of the evidence. The district court denied Doe's motion for a new trial. Doe appeals.

## II.    DISCUSSION

Doe primarily argues the district court abused its discretion by excluding the proffered testimony from Hinman that (1) no one at Body Aesthetics told Hinman she could not use the photographs from the PowerPoint presentation, and (2) Hinman did not promise the appellees the right to review and approve her article before it was published. As a result, Doe contends the jury was allowed to hear only one side of the story, crippling her ability to counter the appellees' assertion they were less culpable because Hinman violated the appellees' trust by publishing the pictures against their direction and without their knowledge.

We review a district court's decision to exclude testimony for an abuse of discretion. See Bady v. Murphy-Kjos, 628 F.3d 1000, 1002 (8th Cir. 2011). "A district court enjoys wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was clear and prejudicial abuse of discretion." Id. at 1002-03 (quoting Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010) (internal quotation marks omitted)). Despite this deferential

standard, we overturn the district court's decision to exclude critical evidence without adequate justification.

The Federal Rules of Evidence "favor admitting relevant evidence absent a specific reason to exclude it." Moore v. United States, 648 F.3d 634, 639 (8th Cir. 2011) (citing Fed. R. Evid. 402). Hinman's testimony was highly probative of Doe's claims for punitive damages, which, according to the jury instructions, required a finding the appellees' conduct was "outrageous because of . . . evil motive or reckless indifference to the rights of others." See Grewell v. State Farm Mut. Auto. Ins. Co., 162 S.W.3d 503, 508 (Mo. Ct. App. 2005) ("Punitive damages may be awarded for breach of a fiduciary duty upon a . . . showing that the defendant acted with evil motive and reckless indifference to the plaintiff's rights."). A juror would more likely find the appellees showed reckless indifference toward their fiduciary duties to Doe if the juror believed the appellees gave Hinman the PowerPoint presentation without instructing her not to use the pictures or, at a minimum, without getting Hinman's assurance the appellees would have an opportunity to approve the article before the article was published.

The appellees' trial strategy emphasized Hinman's culpability, increasing the importance of the jury hearing Hinman's side of the story. Dr. Young, for example, said during direct examination "that we told [Hinman] . . . she was not allowed to use the photographs" and "Hinman had promised that [Dr. Young] would get to review this article." The appellees also stressed this theme in opening and closing statements, claiming the appellees made a mistake in "trust[ing] somebody [the appellees] were trying to help" and as a result "got burned," and arguing "when it comes to this punitive damage issue . . . [the appellees] had absolutely no idea . . . [Hinman] would break her word and would publish nude photographs of [Doe]." By emphasizing this theme throughout the trial, the appellees made Hinman's testimony to the contrary all the more probative and significant.

Of course, not all relevant evidence is admissible. Rule 403 of the Federal Rules of Evidence provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Absent from this list is "unfair surprise"—the district court's principal justification for exclusion. See id.

That is not to say excluding evidence for unfair surprise is never appropriate. Under Rule 37 of the Federal Rules of Civil Procedure, "[w]hen a party fails to . . . identify a witness in compliance with [Fed. R. Civ. P] 26(a) or (e) . . . [t]he district court may exclude the . . . testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (citing Fed. R. Civ. P. 37(c)(1)). One of the purposes of discovery is to eliminate unfair surprise. See Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993). Rule 37's enforcement mechanism helps accomplish this purpose.

But the district court's discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute. See Wegener, 527 F.3d at 692 (noting "the district court's discretion narrows as the severity of the sanction or remedy it elects increases"); see also ELCA Enters. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 190 (8th Cir. 1995) ("Exclusion of evidence is a harsh penalty, and should be used sparingly."); Bonds v. Dist. of Columbia, 93 F.3d 801, 809 (D.C. Cir. 1996) (explaining "a discovery sanction that results in a one-sided trial . . . is a severe one" and before imposing such a sanction, "the district court should consider a less drastic sanction"). The district court here did not reference Rule 37 as justification for excluding Hinman's testimony. And the record does not indicate a Rule 26 disclosure violation because Doe timely filed her notice identifying Hinman as a potential witness. Rules 26 and 37 cannot support the district court's exclusion of Hinman's testimony.

-9-

The appellees argue the exclusion was appropriate because, at the time appellees sought such information during discovery, the *Riverfront Times* successfully shielded Hinman from discussing these topics by asserting a qualified journalist's privilege. By excluding Hinman's testimony, the appellees contend the district court properly prevented Doe from "ambush[ing]" them with information they were prevented from discovering. According to the appellees, "[c]ourts need not indulge practices whereby a party [or non-party] asserts a privilege during pre-trial examination and then voluntarily waives that same privilege at trial to surprise or prejudice the opposing party." See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 576 (1st Cir. 1989) (quoting Meyer v. Second Judicial Dist. Court, 591 P.2d 259, 261 (Nev. 1979) (alteration in original) ("Courts have not been afraid to bar a party from testifying where doing so was necessary to prevent the 'thwart[ing of] the purposes and policies of the discovery rules.'"); Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 530 (N.D. Cal. 1988) (determining a party could not conceal information from discovery by asserting a non-party's attorney-client privilege and then "expect to spring it upon the [other party] in the midst of trial for the sake of obtaining a tactical advantage in litigation"); Duffy v. Currier, 291 F. Supp. 810, 815 (D. Minn. 1968) (deciding it would not allow one party to surprise or prejudice an opposing party by asserting and then voluntarily waiving the privilege against self-incrimination). We reject the appellees' argument for several reasons.

First, the consistent theme of the district court's discovery orders concerning the *Riverfront Times* was for the parties to avoid topics involving the editorial process and by extension an alleged qualified journalist's privilege. However, the proffered testimony from Hinman did not implicate the editorial process. To the extent the district court's pretrial orders prevented the parties from asking about conversations and agreements between Hinman and the appellees regarding use of Doe's photographs or pre-publication review of the article, such discovery did not seek confidential communications—only communications between Hinman and the appellees—and the orders clearly would be an abuse of discretion and harmful error.

Second, assuming the challenged testimony somehow implicated a qualified journalist's privilege,[3] the holder of that privilege—the *Riverfront Times*—was apparently willing to waive such a privilege and allow Hinman to testify about this specific and narrow topic. Hinman herself, with *Riverfront Times* not objecting, testified for the offer of proof.

Third, the parties deposed Hinman over five months before trial, and appellees' counsel had the opportunity to inquire about Hinman's recall of the conversations concerning use of images and any pre-publication review. Appellees' counsel chose not to inquire. Any surprise was self-inflicted and not unfair to the appellees.

---

[3]We offer no opinion as to whether the district court was correct in following Cont'l Cablevision, in which the district court for the Eastern District of Missouri decided "news reporters enjoy a qualified privilege, derived from the [F]irst [A]mendment guarantee of a free press, to withhold from discovery in a civil case confidential or non-confidential sources, materials, or other information where such discovery would impinge on the ability of the media to gather and disseminate news." Cont'l Cablevision, 583 F. Supp. at 435; compare Gonzales v. Nat'l Broad. Co., 194 F.3d 29, 32 (2d Cir. 1999) (recognizing the qualified privilege applies also to nonconfidential materials); Shoen v. Shoen, 5 F.3d 1289, 1295 (9th Cir. 1993) (similar); United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988) (similar); and United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980) (similar), with United States v. Smith, 135 F.3d 963, 972 (5th Cir. 1998) (explaining the Fifth Circuit had "never recognized a privilege for reporters not to reveal nonconfidential information" and concluding "newsreporters enjoy no qualified privilege not to disclose nonconfidential information in criminal cases"). Even if the *Riverfront Times* held such a privilege, it was qualified, and the newspaper's First Amendment rights were to be balanced against the importance of the testimony. See Cont'l Cablevision, 583 F. Supp. at 435 (believing the "privilege may be defeated . . . where the party seeking discovery can demonstrate that the testimony . . . is relevant enough, and otherwise unavailable, to outweigh the [F]irst [A]mendment interest of the media").

Fourth, if any unfair surprise existed, the proper course here was not exclusion but instead something less drastic, such as a continuance, to allow the appellees to prepare further for the new information. See Black v. J.I. Case Co., Inc., 22 F.3d 568, 573 (5th Cir. 1994) (quoting the advisory committee's notes to Fed. R. Evid. 403) ("Where a party claims unfair surprise 'the granting of a continuance is a more appropriate remedy than exclusion of the evidence.'"); see also F&S Offshore, Inc. v. K.O. Steel Castings, Inc., 662 F.2d 1104, 1108 (5th Cir. 1981) (noting "unfair surprise is a particularly problematic ground for exclusion of evidence under Rule 403").

Finally, the *Riverfront Times* was not a party to the lawsuit. The cases cited by the appellees in support of exclusion are distinguishable because they all involved either a party seeking to introduce evidence by waiving a previously exercised privilege, see Gutierrez-Rodriguez, 882 F.2d at 576; Duffy, 291 F. Supp. at 815; Rubenstein v. Kleven, 150 F. Supp. 47, 48 (D. Mass. 1957), or a party working in concert with the holder of the privilege to accomplish the same, see Fox, 120 F.R.D. at 530. Absent evidence of collusion, which the appellees have not alleged or shown, it was improper to penalize Doe—by excluding evidence critical to a central issue in her case—because of the *Riverfront Times*' conduct.

We review for error. The district court searches for the truth. That search was wrongly obstructed in this case. The district court's abuse of discretion was clear and substantially prejudicial to Doe's ability to show the appellees' breach of fiduciary duty disregarded her privacy rights and adversely affected her claims for punitive damages.

We reject, however, Doe's argument that we should grant a new trial concerning liability on her invasion of privacy claim because, as Doe asserts, "the jury's verdict in favor of [the appellees] was against the greater weight of the evidence." "When a motion for a new trial is founded on the assertion that 'the jury's verdict is against the weight of the evidence,' the district court's ruling is 'virtually

unassailable on appeal.'" <u>PFS Distrib. Co. v. Raduechel</u>, 574 F.3d 580, 589 (8th Cir. 2009) (quoting <u>Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997)). Reversal is only warranted if we determine there is absolutely no evidence supporting the verdict after "[v]iewing the evidence in the light most favorable to the verdict." <u>Id.</u> (quoting <u>Computrol, Inc. v. Newtrend, L.P.</u>, 203 F.3d 1064, 1068-69 (8th Cir. 2000) (internal quotation marks omitted)). We cannot do so here.

Doe recognizes the only meaningful difference in the instructions for each of her claims is the invasion of privacy claim required the jury to find the appellees' actions brought "shame and humiliation and as a result thereof [Doe] was damaged," while the breach of fiduciary duty claim only required that Doe "sustained damage." The jury heard evidence that Doe learned about the publication from her attorneys over one year after the article was published. There was no evidence anyone else identified Doe as the person in the photograph. While Doe testified she was humiliated, shamed, and embarrassed, the jury was not required to believe her.[4] <u>See</u>,

---

[4]The dissent emphasizes the appellees' closing argument acknowledgment that Doe suffered humiliation and shame. This acknowledgment was in the context of a discussion on damages, not liability, and was immediately preceded by these comments:

> Of all of the facts when you're coming and talking about damages, . . . I do believe the most important one, though, is who knows about this. . . .

> And why is that important? Well, it must, it has to give Ms. Doe some comfort that here we are, again, three and a half years after this article was published and the list of people that know her true identity are on that board. And other than the parties to this lawsuit and their lawyers, and that number of people adds up to zero.

Considering this context, we do not believe the appellees' acknowledgment had the impact upon the invasion of privacy claim the dissent ascribes to it.

e.g., <u>United States v. Reed</u>, 636 F.3d 966, 970 (8th Cir. 2011). The jury verdict, finding the appellees not liable on Doe's invasion of privacy claim, was supported by the evidence.

The wrongly excluded testimony from Hinman was not likely to change the jury's verdict on the privacy claim. Whether the surgeons gave Hinman the photographs with instructions not to use them or with the promise of pre-publication review is only marginally relevant, if at all, to the shame and humiliation determination, and does not support reversal. <u>See</u> <u>Chism v. CNH Am. LLC</u>, 638 F.3d 637, 640 (8th Cir. 2011) (recognizing we will only reverse based upon an evidentiary ruling if the error is a clear abuse of discretion and affects the substantial rights of a party or "had more than a slight influence on the verdict" (quotation omitted)); <u>Williams v. City of Kansas City, Mo.</u>, 223 F.3d 749, 755 (8th Cir. 2000) ("Evidentiary errors affect a party's substantial rights when the cumulative effect of the errors is to substantially influence the jury's verdict."). We detect no significant influence the Hinman testimony ruling had upon the jury's privacy claim verdict, nor do we detect any "miscarriage of justice." <u>See</u> <u>PFS Distrib. Co.</u>, 574 F.3d at 589 (quotation omitted).[5]

Nor is it necessary to retry the issue of compensatory damages. Doe maintains the evidentiary error "limited the scope of actual damages because the jury could not believe that [Doe] suffered emotional distress in thinking that her own physicians intentionally violated their duty and her trust without hearing Kristen Hinman's

_____

[5]We also reject Doe's argument she is entitled to a new trial regarding liability on the privacy claim because the appellees' counsel improperly commented on the merits of Doe's original medical malpractice suit three times during trial. We note the district court gave a cautionary instruction, which diminished the risk of unfair prejudice. <u>See</u> <u>United States v. Davidson</u>, 449 F.3d 849, 853 (8th Cir. 2006). Doe has failed to show the challenged comments unfairly prejudiced her privacy claim.

testimony." We are unpersuaded this evidence had a substantial effect upon the jury's compensatory damage award and therefore limit the new trial to the issue of punitive damages.

## III.   CONCLUSION

We affirm in part, reverse in part, vacate the district court's judgment on punitive damages, and remand for a new trial on punitive damages.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I agree with the court's conclusion that the district court abused its discretion in excluding testimony of Kristen Hinman of the *Riverfront Times* newspaper in St. Louis. Jane Doe should have been permitted to introduce Hinman's testimony in support of her claims against Aesthetic Surgery Associates, Inc., and three of its doctors ("the doctors"). The claims were based on the doctors' disclosure of nude photographs of Doe's body to the *Riverfront Times* and the resulting publication of those photographs by the newspaper. As a result of the evidentiary error, "the jury was allowed to hear only one side of the story, crippling [Doe's] ability to counter the [doctors'] assertion that they were less culpable because Hinman violated the [doctors'] trust by publishing the pictures against their direction and without their knowledge." *Ante*, at 7. I concur in the remand for a new trial on punitive damages for the doctors' breach of fiduciary duty. I dissent, however, from the court's decision to leave in place the judgment on Doe's invasion of privacy claim that was rendered on this flawed record.

Doe should receive a new trial on her claim of invasion of privacy. The jury was instructed to rule for Doe on this claim if "the defendants' giving of plaintiff's photographs to the Riverfront Times Newspaper brought her shame and humiliation and as a result thereof she was damaged." Doe's theory was that the doctors' giving of the photographs to the newspaper brought her shame and humiliation because the

disclosure led directly to the publication of the photographs in a metropolitan newspaper. The erroneous exclusion of Hinman's testimony, however, left the jury with a record indicating that the doctors should not be blamed for the publication of the photographs and the resulting shame and humiliation, because they were misled by a reporter from the *Riverfront Times*. The error thus affected Doe's substantial rights.

The court affirms the judgment against Doe on invasion of privacy, concluding that the evidentiary error had only slight influence on the verdict. The court suggests that the jury must have disbelieved Doe and determined that she did not suffer shame and humiliation at all. *Ante*, at 13. This explanation for the verdict is unlikely; even the final argument for the doctors conceded the injury: "Am I trying to tell you that Ms. Doe was not embarrassed, did not suffer humiliation and shame in the things that she's talked to and that made her very upset? Absolutely not. I don't doubt for a second that she suffered these things, nor do my clients." R. Doc. 179, Vol. 5, at 40-41. But even assuming it is conceivable that the jury rejected the concession of the doctors, the inference is not so strong as to exclude other reasonable explanations for the verdict. Doe is entitled to a trial on invasion of privacy that is not tainted by a misleading portrayal of the circumstances under which the doctors gave the photographs to the *Riverfront Times*.

———————————————